JOHN CASEY, ADMINISTRATOR, &c., OF MARY JANE CASEY, Respondent, *against* THE NEW YORK CENTRAL AND HUDSON RIVER R. R. Co., Appellant.

(Decided February 3d, 1879.)

Upon the question as to whether or not a railroad company has been guilty of negligence in respect to an accident to one crossing its track, the presence or absence of a flagman at the crossing at the time of the accident are facts relevant to the issue; and the fact that there had been a flagman at the point before the accident, coupled with the fact that there was none at the time of the accident, may be shown as tending to prove negligence.

Casey v. The New York Central and Hudson River R. R. Co.

Questions calling upon a witness to say whether he saw an engine sufficiently to see whether or not the bell was ringing; whether he was in a position where, if a bell had been rung, he could have heard it; whether he could, when in a certain position, see a certain other designated spot, are questions calling for statements of fact, and not for the opinion of the witness.

A minor is not held to the exercise of so high a degree of care and prudence as is required from adults.

The decision to the contrary in *Honesberger* v. *The Second Avenue Railroad Co.*, (2 Abb. Dec. C. of Ap. 378), examined and not followed, from the opinions expressed in subsequent cases in the same court.

APPEAL from a judgment entered upon a verdict for the plaintiff rendered at a trial, and from an order denying a motion for a new trial made upon the minutes.

The action was for damages for negligence, causing the death of plaintiff's intestate, aged fourteen years, who was run over in the street and killed by one of defendant's locomotives while she was crossing an avenue in the city of New York, on her way home with groceries which she had been to the store to purchase. The defense was contributory negligence on the part of the deceased and her parents.

*Frank Loomis*, for appellant.

*Christopher Fine*, for respondent.

CHARLES P. DALY, Chief Justice.—The motion for a nonsuit was properly denied. There was sufficient proof of negligence on the part of the defendant's employees, and the question of co-operative negligence on the part of the girl was, upon that testimony, a question of fact for the jury. For all that appears in the evidence, the girl may, before she attempted to cross the street, have looked in either direction to see if there were approaching cars; and the approach of the engine was so rapid, and at such an unusual rate of speed, according to the testimony of the plaintiff's witnesses, that it may well be that, notwithstanding the exercise of due care and caution on her part before crossing, the engine came out of the yard so suddenly, and at a speed so rapid, that it was impossible for her to avoid the danger.

At all events, the testimony does not show such a state of facts as would justify us saying, as a conclusion of law, that there was co-operating negligence on her part. The question, therefore, was one for the jury, and their finding upon it is conclusive.

None of the exceptions to the admission or exclusion of testimony were well taken. The question put to the witness McCormick was not calling for an opinion, but for a fact. It was, in substance, asking him whether he saw the engine sufficiently to see whether the bell was ringing or not. The questions whether he saw any flagman there when the girl was knocked down, or after she was killed, were proper; for the fact of the presence or absence of the flagman may be shown. Such a question does not come within the ruling of the case of *Anderson* v. *Rome*, *&c.*, *R. R. Co.* (54 N. Y. 334), on which the appellants rely. The questions to the same witness, whether from a certain position the interior of the yard can be seen so as to observe the first northern track, was not calling for an opinion, but for a fact. What was said in respect to moving the engine four or five inches, to get the body of the child from under it, amounted to nothing more than the man in charge of the engine saying that he could not move it; which, it appeared from his own testimony afterwards, was owing to the state of nervous excitement he was in, in consequence of the killing of the girl; and the engine was moved by another employee, who was upon it, to enable the policeman to get the body out. This testimony could have had no bearing detrimental to the defendants, and constitutes no ground for granting a new trial.

The same witness was asked if he was in a position where, if a bell had been rung, he could have heard it, and he answered that he was. This also was testifying to a fact, and not to an opinion. He was sitting in the window of a house at the south-east corner of Tenth Avenue and Thirty-first Street, with his head out of the window. He saw the train in motion before the girl was killed, and saw it pass the Tenth Avenue. He testified that his hearing was good, and

a subsequent witness testified that the ringing of a bell of a locomotive could be heard for three or four blocks. It is insisted that it was for the jury, and not for the witness, to judge whether he could, from the position he occupied, hear the bell. It was for the jury to determine whether the bell was rung or not; but as to the witness's faculty of hearing, he knew better than the jury could possibly know how far he could hear the ringing of the bell of a locomotive. He knew that at a certain distance from a locomotive which he saw passing that he could hear the ringing of its bell, and could swear to that as a fact. It was not testifying that he must have heard it if it were rung, but simply as to his ability to hear the ringing of such a bell at a given distance, which was testimony to go to the jury for what it was worth. It is often difficult to determine the line of demarcation which separates the expression of an opinion from the statement of a fact, and this, in my judgment, was the statement of a fact.

The witness Kiernan saw the train strike the girl. He was asked if any whistle was blown. This was a proper enquiry (*Ernst* v. *Hudson, &c., R. R. Co.*, 39 N. Y. 66). His answer was that he could not say whether or not.

As I have before stated, the presence or absence of a flagman at the time of the accident was a part of the *res gestæ*, as bearing upon the degree of care or caution with which a railroad runs its trains, as was held in *McGrath* v. *New York Central R. R. Co.* (63 N. Y. 525, 526, 527) and in *Beisiegel* v. *Same* (40 N. Y. 9); and if the presence or absence of a flagman may be shown as bearing upon the question of negligence, I see no objection to showing that it had been the habit of the railroad to have a flagman at that place, as tending to show negligence by the omission to have one on this particular occasion when the train started. (See the remarks of Woodruff, J., in *Ernst* v. *Hudson River R. R. Co.*, 39 N. Y. at p. 67.)

The evidence, however, did not amount to this; it was that the witness had seen a flagman there, but was not positively sure that he had seen one at that very point. In *McGrath* v. *New York Central R. R. Co.* (59 N. Y. 468), the de-

fendant was allowed to show that the railroad had kept a flagman at the crossing, but that he was not there at the time of the accident. The judge in charging the jury said, that the only pertinence of that evidence was upon the point whether the plaintiff paid that attention he should have paid in approaching the crossing; and the Court of Appeals held that this was error, as it was admitting the evidence upon the theory that the plaintiff was entitled to construe the absence of the flagman from his customary place as an indication that no train was approaching, and was excused from exercising that degree of vigilance in looking up and down the track to discover what otherwise would be required of him. But when the case came again before the Court of Appeals, in 63 N. Y. 522, it was distinctly held that proof of the absence of a flagman might be received as one of the circumstances proper to be proved as bearing upon the question of the defendant's negligence, and they reversed the judgment because this evidence was excluded. There is an obvious distinction between allowing such evidence to show negligence on the part of the plaintiff and receiving it only as evidence pertinent to show the absence of co-operative negligence. If the absence of a flagman may be shown as bearing upon the degree of care or caution with which a railroad runs its trains, then certainly evidence that it had been the habit of the railroad to have a flagman at the place where the accident occurred was evidence of the same general character. Such, at least, is my construction of these two decisions in the case cited; and as I understand the views of the court upon the second appeal, it is not error to receive evidence that the railroad had been in the habit of having a flagman at the spot where the accident happened. Both decisions amount to about this: That whilst it may have been the habit to have a flagman at the crossing, and that may be shown as bearing on the defendant's negligence, yet the want of one would not excuse a person crossing the road without looking to see whether a train was approaching.

I fail to see what objection there was to allowing the question as to how many switches there were between 30th

Casey v. The New York Central and Hudson River R. R. Co.

and 31st Streets, for the jury were entitled to know everything descriptive of the particular locality where the accident happened. Several questions were put by the defendant and excluded; the object of which, as disclosed in a subsequent offer, and by the questions themselves, were to show that the employee, Baird, who was in charge of the engine, was known to the defendant's superintendent of machinery, who had reinstated Baird, to be a faithful and competent man to act as fireman on an engine, or mind it in the absence of the engineer, and was faithful in the discharge of his duty. No authority is cited to show that the defendant had a right to give such evidence as this, and no satisfactory reason was stated upon the argument why it should have been allowed.

All that had previously appeared was, that Baird had been suspended; and this superintendent, who was the one who had suspended him, testified that he reinstated him because he found that he was not to blame in the matter for which he was suspended. The court said the defendant might give the evidence offered at folio 305, if the object of it was to show that it was impossible to stop the train in time to prevent the accident. But the counsel said that that was not the object in offering it, but as bearing upon the point as to where the train came to a stop, upon which the court excluded it. As the train passed over the girl, I do not see the materiality of this evidence; or if the point where the train came to a stop was material, then the objection to the question was that the conditions assumed in it had not been proved. The defendants, moreover, afterwards gave evidence in accordance with the testimony, to show within what space the train would stop.

[Some remarks in reference to certain requests of defendant to charge, and which it was held had been substantially charged, are here omitted.]

The third proposition was that the girl, who was a minor, was to be held to the exercise of the same care and prudence as an adult. The judge charged that the deceased was a bright girl of 14, and that the jury were to exact of her the

care and judgment which a bright girl of fourteen years of age ought to have exercised under the circumstances of the case; to which the defendants excepted. He also charged absolutely that she ought to have looked before she went upon the track. I think, as applicable to the facts of this case, that the rule which the judge laid down was correct, and that the defendants were not entitled to have the jury instructed that she was to be held to the exercise of the same care and prudence as an adult. I am aware of the decision in the case of *Honesberger* v. *The Second Avenue R. R.* (2 Abb. Dec. C. of Ap. 378). The reversal in that case was for what was held to be error in my own charge in saying, in respect to co-operating negligence on the part of a minor who was run over in the public thoroughfare by a street car, that a child *sui generis* is held only to the exercise of that caution and discretion of which such children are presumed to be capable, and not to the degree of caution, foresight and discretion that would be exacted from an adult. It would not, therefore, be becoming in me to express my opinion of the soundness of a decision declaring my own ruling to have been error, but I may with propriety refer to subsequent cases in the Court of Appeals, in which the law is declared to be as I stated it, and not as it was expounded in *Honesberger* v. *The Second Avenue R. R.* (*supra*). Thus, in *O'Mara* v. *Hudson River R. R. Co.* (38 N. Y. 447), where the question was one of contributory negligence, Chief Justice Hunt, in delivering the opinion of the court, says: " The old, the lame and the infirm are entitled to the use of the streets, and more care must be exercised towards them by engineers than towards those who have better power of motion. The young are entitled to the same rights, and cannot be expected to exercise as great foresight and vigilance as those of maturer years." In *Mowrey* v. *Central City R. R.* (51 N. Y. 667) Justice Johnson said that the young are entitled to have their condition and ability, mental and physical, considered in diminution of the degree of care exacted of them ; that no greater degree of care was required than the capacity of the person would allow him to

exert. In *Reynolds* v. *N. Y Central R. R. Co.* (58 N. Y. 252) Justice Andrews, in delivering the opinion of the court, says that " the law discriminates between *children* and *adults*, the feeble and the strong, and only requires of each *that degree of care* to be *reasonably expected in view of his age* and condition," and the same judge, in delivering the opinion of the court in *McGovern* v. *N. Y. Central, &c., R. R. Co.* (67 N. Y. 421), upon the question of contributory negligence, says, " that it is not to be applied inflexibly in all cases without regard to *age*, or other circumstances. The law is not so unreasonable as to expect or require the same maturity of judgment, or the same degree of care or circumspection in a child of tender years as in an adult." These views are directly opposite to what Judge Hogeboom declared, and the court decided to be the law in *Honesberger* v. *The Second Avenue R. R. (supra).* In delivering the opinion of the court he said, that in applying the rule that exacts that degree of care which a person of ordinary prudence would exercise in the situation supposed, the law makes *no discrimination on account of age;* that it applies to all persons without exception. The better course, therefore, was the one which the judge at the trial adopted, to lay down the rule as stated in the subsequent cases by the judges referred to, and not as the law was expounded in *Honesberger* v. *The Second Avenue Railroad.*

The sixth and seventh requests were that the defendants were not bound to give any notice of the approach of the engine by the ringing of a bell, or the blowing of a whistle; —in respect to which it is sufficient to say, upon the authority of the cases cited, that they were. There were other exceptions to the charge, but as they were not argued, and are not referred to in the defendant's points, I shall assume that they are not relied on. The judgment should be affirmed.

VAN BRUNT and LARREMORE, JJ., concurred.

Judgment affirmed.