STEVER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.    June 17, 1896.)

1. DAMAGES—EXPERT TESTIMONY—PERSONAL INJURIES.

Where a physician testifies, in an action for personal injuries, as to the existence of a "direct hernia," a further question whether such a hernia "at any time becomes dangerous to life, or becomes dangerous or painful in any way," does not call for speculative evidence, but it calls only for an opinion as to what might result from existing conditions.

2. APPEAL—OBJECTIONS NOT RAISED BELOW.

Where a question asked a witness is not, in its entirety, improper, an objection which does not point out the part of the question claimed to be improper is not available on appeal.

3. EVIDENCE—OPINION.

A witness in an action for injuries received at a railroad crossing testified that he saw the train which struck plaintiff as it approached the crossing; that the bell was not rung, nor the whistle blown; that he was standing at a point about a quarter of a mile from the ringing post; and that his hearing was good. Held, that a question whether he could have heard the bell if it had been rung, or the whistle if it had been blown, did not call for a mere expression of opinion, but it involved a statement as to the acuteness of the hearing of the witness.

Appeal from circuit court, Wayne county.

Action by Jacob E. Stever against New York Central & Hudson River Railroad Company for personal injuries. From an order denying defendant's motion for a new trial, made on the minutes, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Albert H. Harris, for appellant.
Stephen K. Williams, for respondent.

ADAMS, J. This action was brought to recover damages for personal injuries which were sustained by the plaintiff by coming into collision with a train upon the defendant's tracks at a highway crossing about one mile east of the village of Newark, Wayne county. The accident occurred at a little after 6 o'clock in the evening of November 22, 1892. The plaintiff was a manufacturer and peddler of perfumes and extracts. He was driving a horse attached to a top wagon, which had been fitted up with especial reference to his business. At the point of accident the highway runs north and south and the railroad east and west. The four tracks of the defendant's road are numbered consecutively from the south, No. 1 being the south track and No. 4 the north track. The plaintiff was driving in a southerly direction, and was struck by the "Chicago Limited," a west-bound passenger train running upon track No. 2. The train was several minutes late, and was running at a high rate of speed. When the plaintiff was struck he was carried over 1,600 feet, and, when the train came to a stop, he was found sitting upon the pilot of the locomotive, unconscious. The evidence tends to show that this crossing is by no means what is called a "dangerous" one, but that in ordinary circumstances a traveler approaching it from the north has, at any point within 300 feet thereof, a fairly

unobstructed view of the tracks to the east for about 80 rods; and that, from a point 86 feet north of the north rail of track 4 the view east and west is wholly unobstructed for a quarter of a mile. It appears, however, that upon this occasion the night was very dark, and that the darkness was somewhat intensified by a snow storm of considerable severity. Melvin Ostrander, one of the plaintiff's witnesses, who resided near the crossing, describes it by saying:

"It was dark and stormy. The wind was blowing from the west. It was snowing,—storming. Sometimes it came pretty rough, that you could not hardly discover anything; then again it would slack up again. * * . * I noticed in regard to the difficulty of seeing a train that night, for I had to get off the track pretty quick myself once. By spells, that night, it was difficult to see the headlight on an engine on account of the storm. * * * My attention was called that evening as to the difficulty of hearing trains as they approached the crossing. It was difficult that evening to hear trains as they approached the crossing."

Some evidence was given by the defendant tending to show that this account of the storm was somewhat exaggerated, but, on the other hand, several witnesses testified that the storm did prevail with more or less blinding force. The plaintiff swears that as he approached the crossing he stopped at the north end of the cattle-guard fence, and looked out from his wagon in both directions, but that, hearing and seeing nothing, he proceeded to the second track, where he again looked both ways, which was the last he remembers until he regained consciousness after the accident. This statement is flatly contradicted by the engineer of the train which struck the plaintiff, who testified that when he first saw the plaintiff's horse it was north of track No. 4, on a full run, which continued until the engine struck him; and it is now insisted by the learned counsel for the defendant that the verdict of the jury is so clearly against the weight of evidence upon the question of the plaintiff's own negligence as to justify a reversal by this court. We are of the opinion, however, that the defendant's contention is not well founded, for although it may seem almost incredible that the plaintiff could have approached this crossing in the manner described by him without either seeing or hearing the train which struck him, still there was some evidence which tended to show that the storm was of such a character as to obstruct even the headlight of the locomotive from view, and to prevent the noise of the train's approach from being heard. This being the case, we cannot say, as a matter of law, that the jury were bound to disregard it. The same is true in regard to the question of the defendant's negligence, the evidence concerning which was equally conflicting, and perhaps quite as unsatisfactory. The jury, however, saw the witness upon the stand, and heard him testify. The evidence was submitted to them by the learned court in a charge which is not subjected to criticism, and unless some error was committed in the reception or rejection of evidence we are unable to see why we are not concluded by their verdict.

Our attention has been directed to several such objections, which, it is claimed, are entitled to very careful consideration. First in

the order of their presentation are those which arose upon the answers to certain questions asked of the witness Dr. Landon, who was called to see the plaintiff immediately after the accident, and who continued to attend him while he was suffering from his injuries. He had testified to the existence of a breach upon the plaintiff's right side, which he termed "direct hernia," and upon his redirect examination was asked whether "a breach of that kind at any time becomes dangerous to life, or becomes dangerous or painful in any way." This question was objected to by the defendant's counsel as incompetent, immaterial, and speculative, but the court permitted him to answer the same, upon condition that the witness knew whether such a breach was dangerous or painful. The defendant's counsel thereupon excepted, and the witness answered, "I think it is dangerous," and then he added, without any further question, "It may come out and become strangulated so it is impossible to return it without an operation." He was then asked, "Does death sometimes follow?" to which question the defendant's counsel also objected as incompetent, immaterial, and speculative. The objection was overruled, to which decision the defendant's counsel duly excepted, and the witness answered, "Yes, sir; frequently." We fail to see how this evidence was incompetent, or wherein it was fairly open to the objection of being speculative. The breach itself was a fact, to the existence of which, most clearly, the witness had the right to testify, and, as an expert, he was likewise competent to express an opinion as to whether it was likely to cause pain or become dangerous to life. The question did not call for any opinion as to some possible complication which might arise in the future, but only as to what might result from existing conditions; and it is no more speculative to say that hernia causes pain, and might terminate fatally, than it is to say the same of appendicitis or peritonitis. The distinction between evidence of this character and such as was deemed incompetent in the Strohm Case, 96 N. Y. 305, and in the Tozer Case, 105 N. Y. 617, 11 N. E. 369, is clearly pointed out in the opinion of Judge Finch in the case of Griswold v. Railroad Co., 115 N. Y. 61, 21 N. E. 726. It is quite possible that the evidence which the witness gave with reference to the strangulation is open to the criticism made by the counsel, but it is to be borne in mind that this portion of his evidence was not in response to any question. It was volunteered upon his part, and the record does not disclose that any motion was made by the defendant's counsel to strike the same therefrom.

Other exceptions which are supposed to present erroneous rulings arose during the direct examination of Dr. Charles H. Towlerton, a witness sworn on behalf of the plaintiff, who was asked the following question, viz.:

"Q. You may answer whether, from the examination which you made of the plaintiff, and the history of his case that has been given you, and your practice and experience as a physician and surgeon, you are able to give an opinion as to the future effects of these injuries of the plaintiff,—as to what the effect will be in the future, as to affecting his health. A. Yes, I could give an opinion. Q. What is your opinion? (Defendant's counsel objected as

incompetent, immaterial, and speculative. Objection overruled. Exception for defendant.) A. I don't think he would be able to do the work that he would before. by any means, and I think he naturally would be a feeble man, —not a strong man. His present condition would certainly indicate that. Q. What, in your opinion, is the probability of his recovering from these injuries? (Defendant's counsel objected as incompetent, immaterial, and speculative. Objection overruled. Exception for defendant.) A. He cannot recover from some of them; that is certain. Q. Just name them, if you please. (Defendant's counsel objected as incompetent, immaterial, and speculative. Objection overruled. Exception for defendant.) A. I don't think he will have the complete use of his limb, and I don't think that his nervous system or general strength will ever be as it was before. The hernia, of course, will probably be persistent."

It appears that the history of the plaintiff's case which this witness had obtained was furnished him by both the plaintiff and Dr. Landon upon some occasion when the witness was making a physical examination of the former, in order to qualify himself to testify in the case, and he had already described very minutely the plaintiff's condition which this examination disclosed. Within all the authorities, therefore, he was certainly authorized to express an opinion, if he had one, as to the probable future condition of the plaintiff's health. Griswold v. Railroad Co., supra; McClain v. Railroad Co., 116 N. Y. 459, 22 N. E. 1062. The only objectionable feature of all this evidence is contained in the first question asked, which apparently furnishes, to some extent at least, the basis upon which the opinion thereafter expressed is made to rest, and which embraced a history of the case, received out of court, and from the plaintiff himself; but the answer to this is that the question in its entirety was not an improper one, and, as the objectionable feature was not specifically pointed out, the counsel's objection, which was quite general in its character, will not avail him upon this appeal. Wallace v. Oil Co., 128 N. Y. 579, 27 N. E. 956.

The plaintiff called as a witness one John E. Burleigh, who testified that he saw the train which struck the plaintiff as it approached and crossed the highway, and that the bell was not rung nor the whistle blown. He also stated that he was standing at a point about a quarter of a mile distant from the ringing post, which was about 80 rods east of the crossing; and that his hearing was good. He was then asked if he could have heard it if the bell had been rung or the whistle sounded, and this question was objected to by the defendant's counsel as incompetent, immaterial, and speculative. The objection was overruled, to which ruling an exception was taken, and the witness answered in the affirmative. It is now contended that the court erred in receiving this evidence, inasmuch as it was for the jury, and not for the witness, to determine whether the latter could or could not have heard the signals if any had been given. In disposing of this contention it is to be noticed that the witness was asked, not whether he would, but whether he could, have heard the bell or whistle. This, it seems to us, called for something more than the mere expression of an opinion, for the answer involved the statement of a fact about which the witness, by reason of his experience, or the knowledge which he possessed as to the acuteness of his faculties, was more competent to speak than

any one else, and therefore it was one to which the plaintiff was clearly entitled. The attempt to draw the line between the statement of a fact and the expression of an opinion is often attended with some difficulty, but this precise form of question has received judicial sanction in a case which arose in the court of common pleas in the city of New York, but which ultimately reached the court of last resort. Casey v. Railroad Co., 6 Abb. N. C. 104-124, 78 N. Y. 518.

The only remaining exception relates to the exclusion of evidence which the defendant sought to obtain from the witness Monahan, who was the conductor of the train in question. He testified that when his train came to a stop after the accident, his rear trainmen went back on the track with red and white lanterns to protect the train, and he was asked how far he was away when he last saw him. This question was objected to, and the objection was sustained, to which the defendant's counsel duly excepted. We are inclined to think that, strictly speaking, this ruling was erroneous, as the evidence sought to be elicited was designed to meet that which had been given by the plaintiff and his witnesses as to the violence of the storm and the extent to which it obscured the view; but we are not satisfied that the error, if any, is of sufficient importance to justify a reversal. The witness had already sworn that the trainman was 360 feet away from him when they exchanged signals; that he saw the answering signals distinctly, and watched the trainman as he went back; that he could not say how far he went back, but it might have been a mile; and this testimony appears to cover the ground so fully as to warrant the conclusion that the defendant's position could scarcely have been strengthened by any answer which the witness could possibly have given.

Upon a careful review of the entire case, therefore, we are of the opinion that no error was committed by the learned court which will make a retrial necessary, and that the order appealed from should, consequently, be affirmed.

Order appealed from affirmed, with costs. All concur.