SIMONSEN v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   July 17, 1900.)

PERSONAL INJURY—CONFLICTING TESTIMONY—INADEQUATE DAMAGES.

Where plaintiff, a boy of 7 years, was struck by defendant's street car, and his physicians testified that he was losing his mind because of an injury at the base of his brain, while defendant's physician was confident that no such symptoms were present, judgment for $1,000 in favor of plaintiff will not be set aside as inadequate.

Appeal from trial term, New York county.

Action by Reuben L. Simonsen, an infant, by his guardian ad litem, Severin E. Simonsen, against the Brooklyn Heights Railroad Company. From a judgment in favor of plaintiff, and an order denying a new trial, he appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HIRSCHBERG, and JENKS, JJ.

James D. Bell, for appellant.
John L. Wells, for respondent.

JENKS, J.   While the amount of damages in cases of this kind is largely with the jury, yet, if the verdict be unreasonably small, the case may be sent back for the reconsideration of another jury.   Phillips v. Railway Co., 5 Q. B. Div. 78; Armytage v. Haley, 4 Q. B. Div. 917; Brown v. Foster, 1 App. Div. 578, 37 N. Y. Supp. 502; Morris v. Railway Co. (Sup.; May 18, 1900) 64 N. Y. Supp. 878; Miller v. Railroad Co., 58 N. J. Law, 428, 33 Atl. 950.   In Morris v. Railway Co., supra, it is said that the exercise of this power is not governed by any well-defined rule, but rests in the circumstances of the particular case; but I think that the exercise of such power should be limited to cases where the result is irreconcilable with justice or with common sense, or plainly indicates that the jury must entirely have disregarded some of the elements of damages which they necessarily should have considered upon the evidence adduced.   In Phillips v. Railway Co., supra, the plaintiff was a physician of middle age and of robust health, who was "irreparably injured to such a degree as to make life a burden and a source of utmost misery," who had undergone great pain and suffering, with the probability of no recovery, and whose condition was at once "helpless and hopeless." He had incurred medical expenses of £1,000, and he would require further medical attendance.   His practice had been £5,000 a year, and he, at time of trial, had been incapacitated for 16 months. A verdict of £7,000 was set aside as insufficient by the queen's bench division; Cockburn, C. J., saying that the positive pecuniary loss all but swallowed up the greater portion of the damages, and that it left little or nothing for health permanently destroyed and income permanently lost, and therefore the court was led to conclude not only that the damages were inadequate, but that the jury must have omitted to take into consideration some of the elements of damage that ought to have been taken into account.   The court of appeal (5 Q. B. Div. 78), per James, L. J., dismissed the appeal; saying, for the reasons and upon the same grounds given by the lord chief justice, that the

damages were unreasonably small, and that the direction of a new trial was proper. In Armytage v. Haley, supra, it appeared that the plaintiff's thigh was broken, and considerable expense had been incurred for the surgeon, who testified that it was doubtful whether plaintiff would not always be lame. The verdict was for one farthing. The court, per Denman, C. J., ordered a new trial on payment of costs. In Miller v. Railroad Co., supra, the ligaments of plaintiff's knee joint were severely strained. There was evidence that the injury was serious, chronic, and painful. There was no counter evidence. The verdict was for six cents. The court, per Beasley, C. J., made the rule absolute, for the reason that the result could not be explained "on any ground that would harmonize it with justice or with common sense." Morris v. Railway Co., supra, was an action for the death of a strong, healthy, active, and intelligent lad, 16 years old, who was about to be graduated from school, and who had assisted in his father's business during vacations. The damages were assessed at six cents. The court, per Hatch, J., say:

"It is quite true that we are not to apply strict rules of logic in sustaining or setting aside the verdicts of juries. Were we to do so, the whole administration of the law by this means would be thrown into the greatest confusion, if it did not entirely fall. Nevertheless we may be reasonably sure, when we are confronted with a verdict which fails in logic when compared with others, and which, upon a statement of it, shocks the moral sense, that something about the verdict is so wrong that it ought not to be permitted to stand. This seems to be the status of this verdict. * * * Measured by all the surroundings, we think that the jury failed to comprehend all the elements of damage which the case necessarily presented, and that they erred in awarding nominal damages, for which reason this judgment should be set aside."

Phillips v. Railroad Co., supra, and Morris v. Railway Co., supra, are the authorities cited to us by the learned counsel for the appellant, but are not precedents in this case.

The question is whether the case at bar warrants the exercise of this power. On March 1, 1899, a boy aged 7 years was struck by a fender of the defendant's car, was thrown in the air, then was caught on the fender, and was carried thereon for some distance, until he was rescued. It is not contended that he was maimed or that any bones were broken, or that there was at the time any apparent physical injury. Indeed, several of the plaintiff's witnesses testify that the lad, when rescued, showed no signs of injury. Dr. Waugh, who was called in six days thereafter, says that he found the lad in bed, suffering from shock, and in so critical a condition that he advised calling in Dr. Brush. When asked what, in the appearance of the boy, led him to think he had met with serious injury, he answered that he had already stated all that he saw and observed. Reference to his prior testimony shows that he had stated that the lad's breathing was irregular, that he was unconscious unless aroused by considerable effort, that his pulse was irregular and rapid, and that his temperature was subnormal. Dr. Brush saw him on March 8th, and found the symptoms described by Dr. Waugh, and additional symptoms. On March 9th he found the lad much improved, and the improvement continued until the middle of April, when he was up and about. He testifies that, in his opinion, the lad is now

in a condition of imbecility, following slight meningitis, which, after an examination of January 25th, he thought would be permanent. Dr. Brim saw the lad a day or two after the accident, when the lad was very nervous and changed. On the next day he was suffering from cold, bronchitis, and a little fever. The bronchitis improved, but the lad became very nervous, and began to breathe in the Cheyne-Stoke manner, which indicated an affection of the brain. His condition varied from day to day, and his mind was peculiarly suspicious. In answer to the question whether there would ever be a recovery, the witness said:

"It is very difficult to say. The prognosis is very dubious. The Court: Difficult to say what? A. How it will come out."

His parent and other lay witnesses gave testimony of actions, his conduct, and his changed physical appearance. Dr. Brush was recalled to testify both to the loss of hearing, which was not due to disease of the ears or nerves, but to the original shaking of the brain, or slight inflammatory action resultant therefrom, and also to an increased sensitiveness of the spine. The objective symptoms indicated by Dr. Brush were change in pupils, change in reflexes, and change in his gait. Dr. Enton, as an expert, testified that, in his opinion, the lad was suffering from ataxia, resulting from injury to the nerves at the base of the brain, which is commonly known as the "cerebellum," of which external violence may be sufficient cause. For the defendant, Dr. Riggs, one of its examining physicians, testified that when he examined the lad on March 9th, with Drs. Brim and Brush, he found him sitting up in bed, very bright and intelligent. His temperature was two-fifths of a degree above normal, and he had some cold and bronchitis; but his general physical condition was simply that of a slight rise in temperature, with a cough, attended with some mucous sounds in his chest, due to bronchitis. The pupils reacted to the light, the pulse was 110, and the reflexes, "and so on," were normal. There were no marks of physical injury and no evidence of meningitis. Another examination was made in company with Dr. Brush in December. The boy was nervous, but the nerve reflex was very slight. He sometimes walked perfectly well, and sometimes in a clumsy way,—a sort of slipping with one foot over the other. He was in fair physical condition, and answered questions. The witness could find no indications of imbecility. The witness also testified that he had seen him in court, and was then asked, "From his appearance here to-day, is there anything you have seen him do that would denote he was not of his right mind, and imbecile or foolish?" This question was objected to as immaterial and leading, and the objection was overruled. The witness answered, "He certainly has not the appearance that we attribute to an imbecile, in any respect."

If, for instance, the lad had lost a leg or an arm, so there could be no question as to his injuries, or he had been otherwise physically injured, so that no evidence could explain his injury away, and the jury had returned a verdict in an amount so small as "to fail in logic when compared with others, or as to shock the moral sense," then

the case might well call for an interference in the interests of adequate compensation. And so in this case we might well be warranted in directing a trial before a new jury if the evidence morally established that the lad was suffering from imbecility caused by the injury, reasonably certain to be permanent; for then the promise of life is but the physical existence of a dependent. But there is not such evidence in this case as moved the courts in the authorities cited, and in many others that need not be stated. The question turns upon the physical and mental condition of a little child, and there is serious dispute as to his manifestations, physical and mental, and as to the medical conclusions to be drawn therefrom. On the one hand, there is opinion of serious disease and imbecility; on the other, opinion that finds no serious impairment of his mentality or of his physique. The physicians are not in accord as to the facts elicited upon their examinations, and they disagree upon the significance of the facts ascertained, and the objective symptoms made manifest. Thus there were two opposing theories, and the function of the jury was to decide between them. Numbers in experts are not more controlling than numbers in ordinary witnesses. Whether the jury thought that the opinions of the plaintiff's physicians were colored by professional partisanship, or were unfounded on the facts, or were exaggerated, or were those of alarmists, and that the opinion of the opposing physician was the wisest or was more warranted by the facts, we do not know, and we need not conjecture. There is conflicting evidence and there is clash of opinion, and we are not called upon to upset the result by the test that, if this court had been sitting as a jury, it would have returned a different verdict. Manning v. Railroad Co., 91 Hun, 279, 36 N. Y. Supp. 201; affirmed in 157 N. Y. 683, 51 N. E. 1091.

If the exclusions of the questions to the witness Smith, whether she noticed any difference in his (the lad's) personal appearance, or whether "he is as fleshy as he was when he went to school," were errors, such errors present no basis for reversal, inasmuch as the facts sought to be elicited thereby were substantially presented to the jury by other testimony. Hamilton v. Forsyth, 77 Hun, 578, 28 N. Y. Supp. 1016; Stever v. Railroad Co., 7 App. Div. 392, 39 N. Y. Supp. 944.

The charge of the learned court upon the question of damages, and the elements thereof, was plain and full. It was unexcepted to, and, in law, was unexceptionable.

The judgment and order are affirmed.