### SWANTON v. KING et al.

(Supreme Court, Appellate Division, Second Department.   May 29, 1902.)

ACTION FOR DEATH—INADEQUATE DAMAGES.
    Where, in an action for death, the only evidence as to the damages sustained were the bare facts that deceased was an unmarried man, 22 years old; that for 12 months prior to his death, while living with his father and mother, he had worked steadily for wages of $9 a week, which he brought home to his mother; and that his next of kin were father, mother, one sister, and four brothers,—a verdict of $600 was not so small as to justify setting it aside as shocking to the moral sense, or as having been rendered in palpable disregard of the elements of damage presented to the jury.

Appeal from trial term, Richmond county.

Action for death by Delia Swanton, administratrix, against J. Berre King and another. From a judgment in favor of plaintiff, she appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Warren C. Van Slyke (George M. Pinney, Jr., on the brief), for appellant.
Sidney F. Rawson, for respondent.

JENKS, J. The jury found the damages to be $600. We are asked to send this case to another jury because the damages are inadequate. Courts rarely interfere with the verdicts of juries in such cases. Johnson v. Railroad Co., 80 Hun, 306, 30 N. Y. Supp. 318, affirmed in 144 N. Y. 719, 39 N. E. 857. The appellant cannot invoke any well-defined rule, but must depend mainly upon the circumstances of this particular case. If we are convinced that a verdict is irreconcilable with justice or with common sense, or was reached in palpable disregard of the elements of damage which the jury was bound to consider, then it is our right to order a submis-

sion of the issue to another jury. Simonsen v. Railroad Co., 53 App. Div. 478, 65 N. Y. Supp. 1077, and cases cited. But our power should only be exercised to overturn a result which cannot be reconciled with a play of fair judgment, in consideration of the elements of damage fairly presented by the facts proven and unchallenged. The very amount of a verdict may be so small as from its mere statement to "shock the moral sense." Morris v. Railway Co., 51 App. Div. 512, 64 N. Y. Supp. 878, and cases cited. Were we to superimpose our judgment upon that of a jury in a case that fails to show aught but that the result reached by the jury was quite different to that which we would have attained, then we should invade its province to usurp its functions. It is frequently said that the question of damages in this kind of case requires speculation and conjecture. But this is a necessity, and not a virtue. The court deprecates this necessity, and admits it in order to give substance and meaning to the statute. But the speculation and conjecture are by way of forecast of the present, and, when the suitor does not afford such facts as are available to form a basis for the forecast, the jury cannot be criticised for refusing to indulge in surmise. In Houghkirk v. President, etc., 92 N. Y. 219, 44 Am. Rep. 370, Finch, J., says:

"The damages to the next of kin in that respect are necessarily indefinite, prospective, and contingent. They cannot be proved with even an approach to accuracy; and yet they are to be estimated and awarded, for the statute has so commanded. But even in such a case there is, and there must be, some basis in the proof for the estimate; and that was given here, and always has been given. Human lives are not all of the same value to the survivors. The age and sex, the general health and intelligence, of the person killed; the situation and condition of the survivors, and their relation to the deceased,—these elements furnish some basis for judgment. That it is slender and inadequate is true (Tilley v. Railroad Co., 29 N. Y. 252, 86 Am. Dec. 297); but it is all that is possible, and, while that should be given (McIntyre v. Railroad Co., 37 N. Y. 289), more cannot be required."

The intestate was 22 years of age. He had worked steadily for 12 months for the wages of $9 a week, which he brought to his mother. He died, leaving neither widow nor child; and his next of kin were his mother, his father, a sister, and four brothers. The record is bare of any other facts descriptive of his personality, or of the age, circumstances, or conditions of any of his next of kin. While the jury were in duty bound to consider the probability of the intestate's living, of his having sufficient ability to support parents or parent when in poverty or in old age, or, if incapable of self-support, the amount which the intestate while living might have brought to his next of kin, and which he, dying, might leave to them (Keenan v. Railroad Co., 145 N. Y. 348, 40 N. E. 15), yet it was not required, indeed, it was not permitted, to range in the unknown, without the limits of almost any facts whatever. The case presents no evidence of the physique or of the general health of the young man. Nothing is told of his education, manual training, capacity, mentality, or industry, from which reasonable men could infer whether or not he would better his condition with the years. Though it appeared that, living with his father and with his mother, he brought his wages to his mother, it was not shown whether he paid any part thereof for

his keep, or whether any part was returned to him for his clothing or for his personal use. A parent would have no legal claim upon him unless the parent became needy and incapable of self-support, and the son contemporaneously had means to sustain the parent. Keenan v. Railroad Co., supra. There is no evidence upon which a jury could speculate upon the contingency of such indigence or of such inability, or, except ·his present wage-earning power, his relative ability if such contingency should come to pass. Moreover, when the mother testifies that she lived in a house bought by her parents, this is some evidence to negative the probability of the parents' future need. The verdict is small. If it had been considerably larger, even though based upon the meager proof in the case, we probably would not have disturbed it, in view of the difficulty of estimating the value of a life in dollars and cents, and of the rule that the judgment of a jury in such a case is rarely disturbed. But small as it is, we cannot say that upon the bare fact that the young unmarried man was 22 years old, and, while living with his father and mother, brought home $9 a week, the measure of money compensation was so unjust and so illogical as to "shock the moral sense." The learned counsel for the appellant cites many cases in which verdicts were set aside or judgments were reversed for inadequacy, and others in which judgments in much larger amounts were affirmed. Such comparison canot deduce a rule followed in those cases, and departed from in this. Cullen, J., in Johnson v. Railroad Co., supra, pertinently says:

"Reference to the amount of recovery in other cases is therefore made, not as establishing a rule of law controlling our action, but as evidencing the common judgment or opinion of courts on this subject."

Several of the cases cited are those of recovery for the deaths of infants, presenting elements of damage other than any shown in the case at bar. And in many others there were facts established of the character suggested in Houghkirk v. President, etc., supra, which warranted the measure of damage meted out.

I think that the learned trial justice (MAREAN, J.) did not err in his disposition of the motion made on the ground that the damages were inadequate, and that the judgment and order should be affirmed, with costs. All concur.