definite sum, as the jury must have found in the light of their verdict for the defendants.

[4] The learned trial court charged the jury erroneously as to the rule of law involved, for he instructed them practically to find a verdict for the defendant if they found that two of the horses were not "sound." There was no exception taken to the charge, but on the coming in of the verdict the plaintiffs moved for a new trial on the ground that the verdict was against the law and against the evidence. This motion being denied and the decision thereon appealed from, this court is not precluded from reviewing the questions of law involved by the fact that there were no exceptions to the charge of the trial court. Smith v. Long Island R. Co., 129 App. Div. 427, 114 N. Y. Supp. 228; Brennan v. City of New York, 123 App. Div. 7, 107 N. Y. Supp. 455; McGrath v. Home Insurance Co., 88 App. Div. 153, 84 N. Y. Supp. 374; Crane v. Barron, 115 App. Div. 196, 100 N. Y. Supp. 937.

The judgment and order of the Municipal Court should be reversed and a new trial ordered, costs to abide the event. All concur.

CURTIS v. HUDSON VALLEY RY. CO.

(Supreme Court, Appellate Division, Third Department. November 15, 1911.)

EVIDENCE (§ 471*)—OPINION EVIDENCE—CONCLUSIONS.

Witnesses who have testified that they did not hear a car whistle at the time of a collision, and whose location with respect to the accident is shown, may not state that they were in a position where they could have heard, if there had been a whistle; this being a conclusion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

Betts, J., dissenting.

Appeal from Trial Term, Saratoga County.

Action by Mary L. N. Curtis, executrix of Pierson C. Curtis, deceased, against the Hudson Valley Railway Company. From a judgment on a verdict for plaintiff for $18,500 for death of deceased, and from an order denying a motion for a new trial on the minutes, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

James McPhillips (Lewis E. Carr, of counsel), for appellant.
Holmes & Bryan (John B. Holmes, of counsel), for respondent.

JOHN M. KELLOGG, J. A collision occurred at a street crossing between the defendant's trolley car and the automobile which the deceased was driving, resulting in his death. The case is a very close one, both as to whether the negligence of the defendant has been established and whether the intestate was free from contributory negligence.

As bearing upon the defendant's negligence, the motorman and conductor upon the car, a bystander near the crossing, and the only passenger on the car heard the whistle blow. The two survivors in the automobile heard no whistle. The witness Silvernail was walking along the road with a gentleman and lady, about 200 feet from the railroad track, and he was engaged in telling them a story. The first thing that attracted his attention to the accident was the crash. He was evidently paying no attention to the trolley car, nor listening for any signal. It does not appear whether he had been at the same place before when trolley cars were going by. He swears that he did not hear any whistle blown, but will not swear positively that it was not blown. He was then asked:

"Were you in a position where you could have heard, if there had been one?"

This was objected to as calling for a conclusion, the objection overruled, and exception taken. He answered:

"I would have expected to hear it, because I have heard it on other occasions from a greater distance."

A motion to strike out the answer was denied, and an exception taken.

The witness Abbie McKay, who was walking along the road near the Palmer House, 700 or 800 feet away from the railroad, did not hear any sound, or whistle blown, or bell rung. She was asked:

"Were you so situated that you would have been likely to hear, had there been one blown or rung? (Objected to as incompetent and improper, and calling for a conclusion. Objection overruled, and exception.) A. Yes."

Under quite similar circumstances, this same testimony was received from seven witnesses, under the defendant's objection and exception.

It is a well-known fact that many people within the hearing of a familiar sound fail to observe it. A half dozen people may sit in a room where a clock strikes. Two may hear it; four may not notice it. The plaintiff evidently realized that this negative testimony was of but little probative force, and had but little bearing upon the question whether the whistle actually sounded or not, and it was sought to strengthen the testimony by the opinion of the witness that he would have heard, if it had sounded. Otherwise, the conclusion of the witness was entirely immaterial. The testimony, in substance, means that the whistle did not sound, and that the witness knows this because, if it had sounded, he would have heard it. It was for the jury to pass upon that question, and conclude how intent Silvernail was upon entertaining the clergyman and the young lady, and determine the conditions of the wind, the atmosphere, the condition of the hearing of the witness, and the distance which sound under such circumstances would naturally be conducted. The decision of the court saved the jury all this trouble, and left it with the witness.

Recent cases have made more clear the rule that the conclusion of the witness upon the very subject which the jury must decide should

not be received, except in cases where, from the technical nature of the subject, the jury from the evidence would be unable, after knowing all the facts, to come to a conclusion. In Ferguson v. Hubbell, 97 N. Y. 507, 512–517, 49 Am. Rep. 544, the court says:

"The general rule of law is that witnesses must state facts within their knowledge, and not give their opinions or their inferences." "Where the facts can be placed before a jury, and they are of such a nature that jurors generally are just as competent to form opinions in reference to them, and draw inferences from them, as witnesses, then there is no occasion to resort to expert or opinion evidence. To require the exclusion of such evidence, it is not needed that the jurors should be able to see the facts as they appear to eyewitnesses, or to be as capable to draw conclusions from them as some witnesses might be; but it is sufficient that the facts can be presented in such a manner that jurors of ordinary intelligence and experience in the affairs of life can appreciate them, can base intelligent judgments upon them, and comprehend them sufficiently for the ordinary administration of justice."

In Dougherty v. Milliken, 163 N. Y. 527, at page 533, 57 N. E. 757, at page 759 (79 Am. St. Rep. 608), the court says:

"It may be broadly stated as a general proposition that there are two classes of cases in which expert testimony is admissible. To the one class belong those cases in which the conclusions to be drawn by the jury depend upon the existence of facts which are not common knowledge, and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subject. If in such cases the jury, with all the facts before them, can form a conclusion thereon, it is their sole province to do so. In the other class we find those cases in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend upon professional or scientific knowledge, or skill not within the range of ordinary training or intelligence. In such cases, not only the facts, but the conclusions to which they lead, may be testified to by qualified experts. The distinction between these two kinds of testimony is apparent. In the one instance, the facts are to be stated by the experts, and the conclusion to be drawn by the jury; in the other, the expert states the facts and gives his conclusion, in the form of an opinion which may be accepted or rejected by the jury."

In Welle v. Celluloid Co., 186 N. Y. 319, 79 N. E. 6, a judgment was reversed because a witness, after describing the nature of a hook and the iron from which it was made, and the bearing of the weight upon the hook, was permitted to answer the question: "Can you state with reasonable certainty what caused the pot to slip from the hook?" The witness replied that he could, and was asked, "What?" and answered, "From the use of a short and open mouth hook." The court held that, from the evidence with relation to the iron, the hook, and the bearing of the weight, the jury were just as competent to give a conclusion as to the cause of the fall as was the witness, citing with approval the citation in the Dougherty Case and Schutz v. Union Railway Co., 181 N. Y. 33, 73 N. E. 491.

It seems to me clear that the witness' statement that he would have been likely to hear the whistle if it had sounded was a mere conclusion, and the persistency with which the question was repeated to other witnesses shows that it was deemed important by the plaintiff to get this conclusion before the jury to strengthen the case.

While it must be conceded that upon principle this evidence can-

not be defended, it is urged that we are bound by former decisions to disregard these exceptions. I think the former decisions are misunderstood, and are given too broad an application, and are to be considered only as the law of the particular case in which they were made.

In Casey v. N. Y. Central, etc., R. R. Co., 6 Abb. N. C. 104, 124, affirmed 78 N. Y. 518, the witness was asked:

"Were you in a position where, if the bell was rung, you could have heard it?"

He was in his own house near the crossing, with his head out of the window, and saw the moving train before it hit the girl. His hearing was good, and the evidence showed that the ringing of the bell of a locomotive could be heard three or four blocks. The court treated the question under the circumstances as relating to the witness' ability to hear; this being a question of fact, rather than a conclusion. The court says:

"He knew that at a certain distance from a locomotive, which he saw passing, that he could hear the ringing of its bell, and could swear to that as a fact. It was not testified that he must have heard it, if it were rung, but simply as to his ability to hear the ringing of such a bell at a given distance, which was testimony to go to the jury for what it was worth. It is often difficult to determine the line of demarcation which separates the expression of an opinion from the statement of a fact, and this, in my judgment, was the statement of a fact."

The fact that the witness was looking at the train before it hit the girl, and that he was so near the track with his head out of the window of his house, shows that his conclusion as to whether he could hear or not was entirely immaterial, for it is evident that under the circumstances he would have heard. His attention was directly called to the engine, and followed a previous question put to him whether he saw the engine sufficiently to say whether the bell was ringing or not. Clearly the judgment should not have been reversed for that ruling, and, with the mind of the witness directed to the moving train and the girl, the court might well say that his answer to the question was a statement of a fact, rather than a conclusion.

In Renwick v. N. Y. Central R. R. Co., 36 N. Y. 132, the witness heard the whistle to "down brakes," but did not hear any other whistle or bell. He was then asked:

"Could you have heard the sound of the whistle or the bell, if one had been blown or rung?"

This was objected to as incompetent, but was allowed under the defendant's exception, and the witness answered:

"I rather think I could have heard it."

The only expression of the court upon that subject was by Parker, J., who says:

"Although it seems to me that this evidence was erroneously admitted, as involving the opinion of the witness upon a question which belonged to the jury to decide, my associates think the question should be construed as merely asking whether the witness was so situated that he could have heard, and in that view admissible."

It clearly was competent to show that the witness was in a position to hear the bell, if it sounded. The objection was not raised that such evidence must be shown by showing the particular facts of his situation in the car, the situation of the doors, windows, and other circumstances, and leave the jury to draw the conclusion, but that the evidence whether he could hear it or not was incompetent. It is quite probable, if the court's attention had been specifically called to the fact that it called for a conclusion, that the ruling would have been different and the question out of the case. It was clearly competent to show that he could have heard; but the court should have required the witness to state the facts, rather than the conclusion which he drew from the facts. In sustaining the question, the court qualifies it by construing it as merely asking whether the witness was so situated that he could have heard. But if all the facts of his situation had been fully shown, then the decision of the court could not rest upon that ground, but must carry with it the condition that the witness could not only swear to all the facts relating to the situation with which he was placed with reference to the sound, but could add to it his conclusion whether under those conditions he could have heard if it had sounded.

In Seeley v. N. Y. C. & H. R. R. Co., 8 App. Div. 402, 40 N. Y. Supp. 866, a witness who lived near the crossing, who did not hear the bell ring, was asked:

"From what distance west of your house have you heard the bell ring and the whistle blow?"

And he answered:

"Some trains you would hear them from New York street, and then again you would not hear them until they got right close to you."

The court considered this as no ground for reversal, adding:

"But, however that may be, no possible harm could have resulted from the answer which the witness gave to the question objected to."

In Stever v. N. Y. C. & H. R. R. Co., 7 App. Div. 392, 39 N. Y. Supp. 944, judgment was affirmed where a similar question was asked; the court referring to the Casey Case, and saying the question seems to call for a fact, and that it is difficult sometimes to draw the line between a statement of fact and an expression of an opinion, and closes the case by saying that upon a careful review of the entire case they find no error which makes a retrial necessary. I think that case is only authority for the position that under all the circumstances no error prejudicial to the defendant occurred.

Since these cases were decided, courts have taken a more positive position upon the question of conclusions of witnesses in cases where they are able to give facts upon which the conclusions are based, and leave the jury to draw the conclusions for itself, and these later cases, it seems to me, overcome any effect which the cases cited might otherwise have upon this case.

In the case at bar the testimony was not merely incidental, so that it was at most a mere technical error; but it was given special prominence, and became a prominent feature of the case. Upon principle

the question cannot be sustained. Where all the facts appear upon which the conclusion rests, as they do in this case, these rulings cannot be sustained on principle, and I think the authority which is claimed to justify them falls far short of meeting the situation.

I favor a reversal of the judgment for the errors as to this class of evidence. In my personal opinion the plaintiff did not sustain the fair burden of proof in showing that the intestate was free from contributory negligence, but my Associates do not express an opinion upon that question. The judgment and order should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except BETTS, J., dissenting, who votes for affirmance on the ground the evidence is competent, under 36 N. Y. 132, and 78 N. Y. 518.

